UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
CHRISTOPHER PATRICK,                                    16-cv-5913

                        Plaintiff,                          Complaint

   -against-

ANGELES CONCRETE CORPORATION,                           JURY TRIAL DEMANDED
OAH CONCRETE CORPORATION, and
OMAR ANGELES HERNANDEZ
(Sued in his Individual Capacity),

                       Defendants.
---------------------------------------------------------X

      Plaintiff CHRISTOPHER PATRICK ("Plaintiff" and/or "Patrick"), by and through his attorneys, FIRESTONE & BREUD, P.L.L.C., complaining of the Defendants OAH Concrete Corporation ("OAH"), Angeles Concrete Corporation ("ACC") (referred to as the "Corporate Defendants") and Omar Angeles Hernandez ("Hernandez")(referred to collectively as "Defendants"), as and for his complaint, alleges as follows:

## INTRODUCTION

      1.     Plaintiff brings this action to recover unpaid overtime wages, liquidated damages and reasonable attorneys' fees under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201, et seq.) ("FLSA"), the Portal-to-Portal Act of 1947, §4(a)(1,2) , 29 U.S.C.A.§ 254 (a)(1,2) ("Portal to Portal Act"), the New York Minimum Wage Act (New York State Labor Law Articles 6 and 19) ("NYMWA"), New York State Labor Law ("Labor Law") § 198-b, §193 and all regulations promulgated thereunder, as well as New York state common law.  Throughout the duration of his employment by Defendants, Plaintiff regularly worked in excess of 40 hours per week, but was never properly compensated at the statutorily required premium rate of pay for the

hours Plaintiff worked in excess of the 40 hours per week. In addition, Plaintiff customarily worked in excess of 10 hour days and was entitled to "spread of hours" compensation for each such day worked.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331, 1332(a)(1) and 1337 as Plaintiff's claims arise under the laws of the United States. This Court also has supplemental jurisdiction over Plaintiff's state law claims, which are so related to the claims within the Court's original jurisdiction that they form the same case or controversy as Plaintiff's federal claim, pursuant to 28 U.S.C. § 1367.

3. Defendants do business in the State of New York, within the Eastern District of New York, and during Plaintiff's employment maintained a place of business at 28 Fairmont Avenue, Medford, New York 11763.

4. Accordingly, this action properly lies in the Eastern District of New York, pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

5. Plaintiff, CHRISTOPHER PATRICK, is a domiciliary of the County of Suffolk, State of New York, residing in West Islip.

6. At all times relevant to the complaint, plaintiff was an "employee" within the meaning of the FLSA and NYLL.

7. OAH was and still is a domestic business corporation organized and existing under the laws of the State of New York, with an address of 28 Fairmont Avenue, Medford, New York 11763.

8.     ACC was and still is a domestic business corporation organized and existing under the laws of the State of New York, with an address of 28 Fairmont Avenue, Medford, New York 11763.

9.     Upon information and belief, Hernandez is the sole owner and shareholder of both OAH and ACC.

10.    Hernandez is a domiciliary of the State of New York, residing in Medford, New York, at the same address as OAH and ACC.

11.    The Corporate Defendants are in the business of pouring and installing concrete in residential, commercial and industrial construction projects.

12.    From on or about November 2015 through on or about April 2016 Plaintiff was employed by Defendants working as a laborer, pouring and installing structural and supportive concrete columns at various job sites throughout New York City and on Long Island.

13.    At all times hereinafter mentioned, the activities of the Corporate Defendants constituted an "enterprise" within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s), whose annual volume of sales or business done is not less than $500,000; the activities of which affect interstate commerce.

14.    At all times hereinafter mentioned, Defendants were and still are an "employer" within the meaning of the FLSA and the NYLL.

15.    At all times hereinafter mentioned, Defendants employed employees, including the plaintiff herein, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of the FLSA.

# FACTS

16.     Plaintiff was an employee of the Defendants, working under Hernandez's direct supervision.

17.     Plaintiff was employed by Defendants from on or about November 2015 through on or about April, 2016 as a laborer.

18.     As a laborer, Plaintiff cut and tied steel rebar, fabricated wood forms to strap around the rebar so that concrete could be poured inside of the fabricated forms.  In addition, Plaintiff did light carpentry work and, at times, operated a Bobcat and other machinery.

19.     At times during Plaintiff's employment with Defendants, Defendants employed in excess of 70 laborers, approximately 30 of whom were based on Long Island.  Plaintiff was a member of one of three 10 person crews that travelled each day from Long Island to job sites in New York City or on Long Island.

20.     Typically, Plaintiff's work day would begin at 5:30 a.m. when he arrived either at Hernandez's home in Medford or at the parking lot of KK Athletics on Horseblock Road, in Farmingville, New York.  Plaintiff would load tools and materials into Defendants' vehicles and, after about two hours, they would depart to travel to that day's work site. On a handful of occasions, Plaintiff would report to work at 4:30 a.m.

21.     Defendants did not pay Plaintiff for the two hours of preparation time each morning, only compensating him when the Defendants' vehicles departed for the work site.

22.     On most days, Plaintiff would depart the work site at between 5:30 and 6:00 p.m. to travel back to Hernandez's house or KK Athletics to unload materials, usually until 8:30 p.m. On some occasions, however, Plaintiff worked until on or around midnight or later.

23. Once Plaintiff left the job site, Defendants did not compensate him for the time spent traveling back to Hernandez's house or KK Athletics to unload materials.

24. Throughout the duration of his employment for Defendants, Plaintiff was paid $160.00 per day, regardless of the number of hours he actually worked on that day. Plaintiff worked an average of 74 hours per week, but was paid only $160.00 per day, regardless of the number of hours he actually worked.

25. Almost every day that Plaintiff worked for the Defendants, he worked more than 10 hours, but was not compensated for the additional hour of "spread of hours" pay.

26. Plaintiff worked the following number of hours in each of the weeks identified:

| Week | Hours |
|---|---|
| November 16 - 21, 2015 | 76.5 |
| November 23 - 28, 2015 | 79 |
| December 1 - 4, 2015 | 62 |
| December 7 - 12, 2015 | 88 |
| December 14 - 19, 2015 | 100 |
| December 21 - 23, 2015 | 43 |
| December 28 - 30, 2015 | 46.5 |
| January 4 - 8, 2016 | 65 |
| January 11 - 16, 2016 | 46.5 |
| January 18 - 23, 2016 | 81 |
| January 25 - 30, 2016 | 54 |
| February 1 - 6, 2016 | 82.5 |
| February 8 - 12, 2016 | 72 |
| February 15 - 19, 2016 | 70.5 |
| February 22 - 26, 2016 | 69 |
| February 29 - March 5, 201 | 90 |
| March 7 - 12, 2016 | 85 |
| March 14 - 19, 2016 | 85.5 |
| March 21 - 26, 2016 | 83 |
| March 28 - April 2, 2016 | 87.5 |
| April 4 - 9, 2016 | 90 |
| April 11 - 16, 2016 | 77.5 |

*Corporate Defendants and Individual Defendant Are Joint Employers*

27. The Individual Defendant Hernandez had control over the conditions of Plaintiff's employment, his work schedule, the rates and methods of payment of his wages and the maintenance of his employment records.

28. At all relevant times herein, upon information and belief, the Individual Defendant was and still is the owner, director, officer, manager, employee and/or agent of the Corporate Defendants.

29. At all times relevant herein, the Individual Defendant Hernandez has directly managed, handled, or been responsible for, the payroll and/or payroll calculations and/or signing or issuing checks to the Plaintiff and by virtue of his position with the Corporate Defendants has been responsible for the proper management and handling of the payroll and payroll calculations for the Corporate Defendants.

30. At all relevant times, the Individual Defendants Hernandez had operational control of Plaintiff's employment by virtue of his financial control over the Corporate Defendants and therefore Plaintiff's wages, and because he hired and fired the Corporate Defendants' employees.

31. Based on Hernandez's interactions with Plaintiff, Hernandez was owner of the Corporate Defendants and Plaintiff understood him to be a "decision maker" with respect to the Corporate Defendants.

32. In addition, Individual Defendant Hernandez holds himself out to be the owner of the Corporate Defendants and had ultimate decision-making authority with regards to all aspects of Plaintiff's employment.

33. The Corporate Defendants and Individual Defendant share common ownership,

operate out of the same location and use the same employees. Particularly, Corporate Defendants and the Individual Defendant share a common principal office address: 28 Fairmont Avenue, Medford, New York 11763.

34. At all times herein, the Individual Defendant has conducted business as the Corporate Defendants. At all times relevant herein, the Individual Defendant has acted for and on behalf of the Corporate Defendants, with the power and authority vested in him as officer, agent and employee of the Corporate Defendants, and has acted in the course and scope of his duties and functions as agent, employee and officer of the Corporate Defendants.

35. At all relevant times, the Individual Defendant had operational control over the Corporate Defendants and Plaintiff's employment.

36. Upon information and belief, the Individual Defendant has willfully and intentionally acted to violate the laws, rules, regulations, statutes and wage orders alleged herein, and by doing so and by virtue of his position as controlling owner, shareholder, director, officer and/or manager of the Corporate Defendants, has assumed personal liability for the claims of the Plaintiff herein.

37. As a matter of economic reality, all Defendants are joint employers of Plaintiff and, as a result, all Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

38. The Corporate Defendants are the Alter Ego of the Individual Defendant.

39. Upon information and belief, the Corporate Defendants are controlled by the Individual Defendant, and upon information and belief, each provide mutually supportive services to the substantial advantage of the other such that each entity is operationally interdependent of each other and therefore, must be treated as a single enterprise.

40. The Corporate Defendants and Individual Defendant share common ownership, operate out of the same location and use the same employees. Particularly, Corporate Defendants and the Individual Defendant share a common principal office address: 28 Fairmont Avenue, Medford, New York 11763.

41. At all times herein, upon information and belief, Individual Defendant Hernandez used Corporate Defendants in order to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose.

42. In conducting the affairs of the Corporate Defendants, the Individual Defendant failed to comply with the corporate formalities, usurped the assets of the Corporate Defendants for personal use, and commingled his personal assets with the assets of Corporate Defendants.

43. The Corporate Defendants are the alter ego of the Individual Defendant, and as will be established at trial, for the purpose of the claims made by Plaintiff herein, the Corporate Defendants have no separate legal existence from the Individual Defendant.

### *Defendants' Failure to Pay Proper Wages Was Willful*

44. Defendants as employers have certain statutory obligations towards employees, including the requirement of paying employees at a higher overtime premium of 150% of their regular rate for each hour worked in excess of 40 and to make, keep and preserve proper payroll records.

45. The Individual Defendant was aware of his requirement to pay Plaintiff for each hour worked and at a higher overtime premium of 150% of his regular rate for each hour worked in excess of 40 hours per week.

46. As such, the various violations of the law which are alleged herein were committed intentionally and/or willfully by the Defendants.

47. Defendants have failed to take any steps to ascertain their duties with respect to the payment of wages to employees.

48. Defendants wilfully and intentionally refused to pay Plaintiff at an overtime rate for hours worked beyond 40 hours per week.

49. Defendants engaged in the willful practice of consistently underpaying Plaintiff under relevant federal and state laws.

50. As a result, the various violations of law which are alleged herein were committed intentionally and/or willfully by the Defendants.

**AS AND FOR**
**A FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT AGAINST DEFENDANTS**

51. Plaintiff repeats and realleges each and every allegation as previously set forth in paragraphs "1" through "50" as if same were set forth at length herein.

52. Plaintiff agreed to perform work and services for Defendants, and, as part of their agreement, Plaintiff was entitled to receive pay for all hours worked.

53. Plaintiff satisfactorily supplied labor in connection with, and in furtherance of, the work required under his employment contracts with Defendants, and in doing so, complied with the terms of his employment agreement with Defendants and was therefore entitled to wages he rightfully earned while working for Defendants.

54. Defendants failed or refused to pay Plaintiff the wages to which he was entitled under his employment agreement with Defendants.

55. Defendants' failure or refusal to pay the wages to which Plaintiff was entitled under his employment agreement with Defendants constituted a breach of Plaintiff's employment agreement with Defendants.

56. That by virtue of the foregoing breach of contract by Defendants, Plaintiff has been damaged in an amount to be proven at trial based upon an accounting of the amount Plaintiff should have been paid as contemplated by his employment agreement with Defendants, less amounts actually paid to the Plaintiff together, with an award of interest, costs, disbursements, and attorneys' fees.

## AS AND FOR
## A SECOND CAUSE OF ACTION
## FAILURE TO PAY OVERTIME AND SPREAD OF HOURS
## WAGES IN VIOLATION OF THE NYLL

57. Plaintiff repeats and realleges each and every allegation as previously set forth 6in paragraphs "1" through "56" as if same were set forth at length herein.

58. Pursuant to the New York Labor Law Articles 6 and 19, Labor Law § 198 and the Wage Orders issued under the N.Y. Labor Law at 12 N.Y.C.R.R. §§ 137-143, Plaintiff was entitled to certain overtime wages and other wages, all of which Defendants intentionally failed to pay in violation of such laws.

59. Wherefore Plaintiff seek a judgment against the Defendants for all wages which should have been paid, but were not paid, pursuant to the New York Labor Law and the Wage Orders issued thereunder and the other provisions of the Labor Law; the total amount of such unpaid wages to be determined at trial upon an accounting of the hours worked by, and wages paid to, Plaintiff, along with an award of liquidated damages, attorneys' fees, interest and costs as provided under the New York Labor Law § 198 and § 663.

## AS AND FOR
## A THIRD CAUSE OF ACTION
## QUANTUM MERUIT AGAINST DEFENDANT

60. Plaintiff repeats and realleges each and every allegation as previously set forth in paragraphs "1" through "59" as if same were set forth at length herein.

61. Plaintiff performed work and services for Defendants in good faith.

62. Defendants, by employing Plaintiff, voluntarily accepted the Plaintiff's services.

63. Plaintiff had a reasonable expectation of fair payment for his labor, but Defendants failed to remunerate Plaintiff.

64. Plaintiff was entitled to fair payment equal to the services they provided for Defendants at a rate which constitutes the reasonable value of their services.

**AS AND FOR
A FOURTH CAUSE OF ACTION
<u>FAILURE TO PAY OVERTIME WAGES IN VIOLATION OF THE FLSA</u>**

65. Plaintiff repeats and realleges each and every allegation as previously set forth in paragraphs "1" through "64" as if same were set forth at length herein.

66. Plaintiff brings this claim for relief pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 207, Plaintiff was entitled to an overtime hourly wage of time and one-half his regular hourly wage for all hours worked in excess of forty hours per week.

67. Plaintiff worked more than 40 hours per week, but was not paid for hours over 40 hours per week.

68. In addition, Plaintiff worked more than forty hours per week for the Defendants, and the Defendants willfully failed to make overtime payments. Plaintiff seeks a judgment for unpaid overtime wages, such sums to be determined based upon an accounting of the hours worked by, and wages actually paid to, Plaintiff, and Plaintiffs also seek an award of liquidated damages, attorneys' fees, interest and costs as provided for by the FLSA.

WHEREFORE, Plaintiff demands a jury trial on all issues and prays for the following relief:

1. An award of actual damages in an amount to be determined by a fair and impartial jury representing unpaid overtime wages owed by Defendants to Plaintiff in violation of the FLSA;

2. An award of liquidated damages pursuant to the FLSA;

3. An award of actual damages in an amount to be determined by a fair and impartial jury representing unpaid overtime wages owed by Defendants to Plaintiff in violation of the NYLL;

4. An award of actual damages in an amount to be determined by a fair and impartial jury representing unpaid "spread of hours" wages owed by Defendants to Plaintiff in violation of the NYLL;

5. An award of liquidated damages pursuant to the NYLL;

6. An award of prejudgment interest at the maximum statutory rate;

7. An award of reasonable attorneys' fees and costs pursuant to the FLSA and NYLL; and,

8. For such other and further relief as the Court deems just, equitable and proper.

Dated: Commack, New York
October 24, 2016

                                        Firestone & Breud, P.L.L.C.

                                        _____/s/_____
                                      By:   Albert Adam Breud, II (AB2355)
                                               356 Veterans Memorial Highway
                                               Suite 3
                                               Commack, New York 11725
                                               (631) 543-3030, ex. 2
                                               breudlaw@optonline.net
                                               *Attorneys for Plaintiff*